OLAF OSCAR WESTIN v. ANDREW P. ANDERSON.[1]

January 29, 1909.

Nos. 15,935—(219).

**Negligence—Questions for the Jury.**

    Plaintiff, directed by defendant's foreman to "put in a boom fall" on a derrick, was raised from the ground to the top of the mast by means of a block and pulley. The mast, with the rope and pulley attached to its head, had been standing in the open for two years. On the fifth trip the rope parted. Plaintiff fell and was injured. One of the wooden sides of the pulley was broken. Plaintiff contended that the rope was not kept in the groove of the wheel, but, because of the absence of a part

[1] Reported in 119 N. W. 486.

107 M.—4

of the side, was allowed to run on its edge, and was thereby cut or worn.

It is *held* that it was for the jury to determine whether the master was guilty of negligence in failing to exercise due care in furnishing a reasonably safe instrumentality and whether plaintiff was precluded from recovering by his own conduct.

Action in the district court for Hennepin county to recover $21,836.-75, damages for personal injuries alleged to have been sustained through defendant's negligence while plaintiff was employed in his stone quarry as a hoisting engineer. The case was tried before Frederick V. Brown, J., and a jury which returned a verdict in favor of plaintiff for $4,124.25. Defendant's motion for judgment notwithstanding the verdict was denied. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Morton Barrows,* for appellant.

*James A. Peterson* and *Paul J. Thompson,* for respondent.

JAGGARD, J.

Plaintiff and respondent, thirty four years of age, was employed by defendant and appellant as a hoisting engineer at defendant's quarry. Defendant's foreman had directed plaintiff "to put in a boom fall" on a derrick, which with the rope and pulley attached to the top of the mast had been standing in the open for about two years. Plaintiff was familiar with the work. The refitting of the derrick required that new guy ropes should be placed on the top of the mast. To accomplish this plaintiff was hoisted to the top of the derrick mast by a rope, to one end of which a pick handle had been tied. This supported plaintiff while four men, standing on the ground and holding the other end of the rope, pulled him to the head of the mast by means of the block or pulley fastened to its top. Plaintiff had ascended the mast four times before the accident occurred. On the fifth trip the rope broke when plaintiff had been raised to a high point. He fell to the ground and suffered the injury for which recovery is sought. This appeal was taken from the trial court's refusal to disturb plaintiff's verdict.

1. The alleged negligence on the part of the defendant was that he failed to exercise due care in furnishing reasonably safe instrumentalities for plaintiff's use; more specifically, that the pulley block through which the rope ran was broken, "so that said rope, instead of going

in the groove of the sheave or pulley of said block, worked itself on the edge of said sheave, so that the edge of said sheave cut or severed said rope." The block and rope were introduced in evidence. One of the wooden sides of the pulley block had been broken. A part next to the pulley was missing.

The first question is, whether the block was broken prior to the accident. Defendant insists that the record "contains no evidence whatever as to when the pulley block was broken; whether it was broken a month before the accident, a day before the accident, or was broken by being dropped to the ground when it was removed from the mast head on the second day after the accident. * * *" This statement is not sustained by the record. One of defendant's employees testified in substance: "This block was taken down two days after the accident. I saw it. This is the block. It looks exactly just as when it was taken down. The way it looks now. It had this piece broken out. I did not see that piece come off." The block, with its weather-stained edge, where the part had been broken off and with another crack through that entire side of the block, was before the jury. It was clearly justified in finding that the block was in fact broken and defective prior to and at the time of the accident.

The second question is: Was the broken block the proximate cause of the breaking of the rope? Defendant urges that, "while we cannot deny the possibility of the rope having been cut as alleged in the complaint, such a finding must rest on mere conjecture. It cannot be reached as a rational and intelligent conclusion." None the less the jury reached that conclusion. An eminent trial judge submitted the question to it and refused to disturb its verdict. The uncontradicted circumstances fully justified that action.

One of the purposes of the missing side of the block was to cause the rope to go through the groove of the pulley, and to prevent it from working to the edge of the sheave, and thus to secure the rope from being cut by its edge. The jury had before it the original pulley and the rope. The rope, as it appeared on argument in the court, gave the strong impression that it had not been merely broken or snapped, but had been worn or cut. It was explained, however, that much handling since the jury trial had changed its condition. It is obvious that we cannot disturb the jury's finding on this account. It was clearly a

question of fact whether plaintiff had borne the burden of showing that defendant's negligence was the proximate cause of the injury.

2. The court gave the conventional charge in submitting to the jury whether the plaintiff was precluded from recovery because he had been guilty of contributory negligence or had assumed the risk. The question was plainly for the jury. It is to be borne in mind that defendant had ordered the plaintiff to go to the top of the derrick. There was testimony that the broken part of the block was turned towards the mast and that its defect was not readily observable by the plaintiff when he was being raised by the rope. The wood on the outside of the block, which could have been seen, was sound. The question of assumption of risk, if involved, was on this reasoning for the jury. If assumption of risk was in issue, the charge by the court was as favorable to defendant as it possibly could have been.

The principles of the law of negligence involved are so elementary and the facts involved so peculiar to this case that the discussion of those most nearly relevant authorities would serve no useful purpose.

Affirmed.